**KRUG et al., Appellants,**

**v.**

**OHIO DEPARTMENT OF NATURAL RESOURCES, Appellee.**

[Cite as *Krug v. Ohio Dept. of Natural Resources* (1995), 100 Ohio App.3d 444.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 94API07–1051.

Decided Feb. 21, 1995.

*Steve J. Edwards,* for appellants.

*Betty D. Montgomery,* Attorney General, and *Teri Jo Finfrock,* Assistant Attorney General, for appellee.

---

JOHN C. YOUNG, Judge.

This matter is before this court upon the appeal of Roger and Pat Krug et al., appellants, from the July 12, 1994 entry of the Ohio Court of Claims that granted the motion to dismiss of the Ohio Department of Natural Resources ("ODNR"). Appellants set forth the following assignment of error on appeal:

"The trial court committed error in granting defendant['s] [ODNR's] motion to dismiss and motion for summary judgment."

On April 4, 1991, appellants filed the instant action against ODNR in the Ohio Court of Claims. Appellants are twenty-one residents of Mahoning County who

lived in or owned homes that were supplied with water from drilled wells on their property. Appellants contend that, in the spring of 1985, SME Bessemer Cement Co., Inc. ("SME") breached an abandoned coal mine near their property, resulting in a loss of their water supply and rendering their homes uninhabitable. Appellants allege that ODNR was responsible for their loss of water because ODNR had failed to perform its duties of administering, enforcing and implementing R.C. Chapter 1513. In granting ODNR's motion to dismiss, the Ohio Court of Claims ruled as follows:

"Defendant's [ODNR's] duty to regulate, inspect and license are public duties. The Supreme Court has held that state agency defendants cannot be found liable for public duties absent a statute authorizing the suit. *Anderson v. Ohio Department of Insurance* (1991), 58 Ohio St.3d 215 [569 N.E.2d 1042], *Sawicki v. Village of Ottawa Hills* (1988), 37 Ohio St.3d 222 [525 N.E.2d 468]. Plaintiffs assert that R.C. 1513.15 authorizes them to bring a cause of action for the alleged wrongs of defendant. The court does not construe any portion of R.C. 1513.15 to allow plaintiffs to bring the cause of action."

It is well established that a court may not dismiss a complaint for failure to state a claim upon which relief can be granted unless it appears "beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery." *O'Brien v. Univ. Community Tenants Union* (1975), 42 Ohio St.2d 242, 71 O.O.2d 223, 327 N.E.2d 753, syllabus. Appellants contend that R.C. 1513.15(B), (G) and (H) authorize them to bring this claim against the state. Furthermore, appellants contend that the facts of the present case give rise to the special-duty exception to the public duty doctrine.

Before a permit is issued granting a company the authority to mine coal, certain information must be provided. The requirements have become stricter over time. In any event, it is the duty of the Chief of the Division of Reclamation or his authorized representative to decide whether to issue a permit to mine a particular area. Thereafter, R.C. Chapter 1513 provides for the monitoring of the area for which the permit has been granted. The monitoring is done on a regular basis to determine if any damage has been done and, if so, how much. R.C. Chapter 1513 provides that the area covered by the permit is to be reclaimed by the company to which the permit was granted.

Appellants maintain that ODNR negligently performed the statutory duties of administering, enforcing and implementing R.C. Chapter 1513 and that R.C. 1513.15 authorizes them to maintain the current action.

R.C. 1513.15 provides as follows:

"(B) Except as provided in division (D) of this section, any person having an interest which is or may be adversely affected may commence a civil action on his

own behalf to compel compliance with Chapter 1513. of the Revised Code against any of the following:

"(1) The division of reclamation where the division is alleged to be in violation of Chapter 1513. of the Revised Code or of any rule, order, or permit issued pursuant thereto, or against any other person who is alleged to be in violation of any rule, order, or permit issued pursuant to Chapter 1513. of the Revised Code;

"(2) The chief of the division of reclamation where there is alleged a failure of the chief to perform any act or duty under Chapter 1513. of the Revised Code which is not discretionary with the chief.

" * * *

"(G) Nothing in this section shall restrict any right which any person or class of persons may have under law to seek enforcement of any of the provisions of Chapter 1513. of the Revised Code and the rules adopted thereunder, or to seek any other relief, including relief against the chief.

"(H) Any person who is injured in his person or property through the violation by any operator of any rule, requirement, order or permit issued pursuant to Chapter 1513. of the Revised Code may bring an action for damages, including reasonable attorney and expert witness fees, in the court of common pleas of Franklin county or in the court of common pleas of the county in which the coal mining operation complained of is located.   * * *"

Contrary to appellants' assertions, R.C. 1513.15 does not create a cause of action giving appellants the ability to sue ODNR in the Ohio Court of Claims for negligent regulation.   In fact, this court held in *Donta v. Ohio Dept. of Natural Resources* (June 9, 1983), Franklin App. No. 82AP–1036, unreported, 1983 WL 3551, that there is no cause of action against the state in the Ohio Court of Claims for the negligent failure of the ODNR to carry out the responsibilities set forth in R.C. Chapter 1513.   Specifically, this court stated that "[t]he statutory duties of the Division of Reclamation to enforce Ohio's strip mining laws create no duty to an individual property owner upon which there can be a recovery of damages against the State for the failure of the State to properly enforce the laws and regulations." *Id.* at 3.   The relevant provisions of R.C. 1513.15 have not been modified by any amendments to R.C. 1513.15 since this court's decision in *Donta.*

The situation in which appellants find themselves is extremely unfortunate. Due to the mining activities of SME, appellants have been dewatered.   When appellants sought to collect damages from SME, they discovered that SME had allowed its policy of insurance to lapse.   Both SME and its insurance company have refused to pay appellants for the damages that they have sustained. Appellants now attempt to make the state of Ohio liable for their damages.   That is not the intent of R.C. 1513.15.   R.C. 1513.15(B) permits a mandamus action

against ODNR and its Chief of Reclamation in order to compel compliance with R.C. Chapter 1513. The Ohio Court of Claims does not have jurisdiction over mandamus actions and such an action would not provide appellants with the monetary relief that they are seeking.

R.C. 1513.15(G) provides that nothing in this section shall restrict any right that any person may have under the law to seek the enforcement of any of the provisions of R.C. Chapter 1513 or to seek any other relief, including relief against the chief. This does not provide appellants with a cause of action. Instead, subsection (G) states that R.C. 1513.15 does not preempt any right that a party may have had prior to the enactment of the statute; however, it does not provide a new cause of action against ODNR for monetary damages.

R.C. 1513.15(H) provides that a person injured through the violation of R.C. Chapter 1513 may bring an action for damages against the operator. Subsection (H) does not provide a cause of action against the state of Ohio.

▮ Appellants attempt to establish that a special relationship was owed to them, which would take this set of facts out of the public duty doctrine. In *Sawicki v. Ottawa Hills* (1988), 37 Ohio St.3d 222, 525 N.E.2d 468, the court held that "[w]hen a duty which the law imposes upon a public official is a duty to the public, a failure to perform it, or an inadequate or erroneous performance, is generally a public and not an individual injury." *Id.* at paragraph two of the syllabus. However, the court noted a special-duty exception to the public-duty rule and set out the elements as follows:

"In order to demonstrate a special duty or relationship, the following elements must be shown to exist: (1) an assumption by the municipality, through promises or actions, or an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured party; and (4) that party's justifiable reliance on the municipality's affirmative undertaking." *Id.* at paragraph four of the syllabus.

In an effort to bring this situation under the special-duty exception, appellants place great reliance on a letter dated December 22, 1981, signed by Charles E. Call, then Chief of the Division of Reclamation. The letter was addressed to a Russell Scoville, who had complained to his state representative concerning the mine operations conducted by Moore Mining Company under permit C–1468. Permit C–1468 covered the same land later mined by SME. The letter indicates that, at the time that the complainants were interviewed, it was speculated that, in July 1981, permit C–1468 may have intercepted an abandoned deep mine that was hydraulically connected to the shallow wells along East Fifth Street. However, as a result of further investigations, the Division of Reclamation concluded

that the abandoned deep mine had not been intercepted and that insufficient rainfall in the area was the reason for the complainants' low-water problems. The letter stated as follows:

"Further excavation by C–1468 must not intercept the abandoned deep mine in the area. If the abandoned deep mine is intercepted, dewatering of nearby wells will occur."

It is undisputed that none of the appellants in the present action initiated any of the complaints which led to this letter. However, appellants maintain that the letter proves that ODNR was aware that if the abandoned deep mine was intercepted, dewatering of nearby wells would occur and, therefore, appellants maintain that ODNR had a duty to ensure that the abandoned deep mine was not intercepted.

Nothing in this December 1991 letter demonstrates an agreement on the part of ODNR to take on a special duty to appellants to ensure that their water supply was not injured as a result of the mining. Appellants also attach affidavits by certain land owners, which indicate that ODNR investigated their complaints and ordered SME to fix the problems and that appellee gave SME extensions of time to correct the problems. Apparently, SME had new wells drilled on certain properties in an attempt to solve the water problems of individual land owners. Again, this does not establish any of the elements of the *Sawicki* test.

Upon careful reading of R.C. Chapter 1513, it becomes apparent that the state of Ohio accepts that a certain amount of damage is going to happen as a direct result of coal mining in a particular area. It is the responsibility of the Division of Reclamation to attempt to minimize the negative effect of coal mining and to ensure that the land is restored to a useful purpose. The duties of the chief include monitoring coal mining to see how much damage is actually done. The evidence in the record indicates that ODNR did monitor the area of the permit according to the requirements of R.C. Chapter 1513. It is undisputed that the chief may determine that certain areas are unsuitable for coal mining, such as natural hazard areas or areas within specified distances of a public road, school, church, community, etc. R.C. 1513.073. However, nothing in the statutory scheme places a duty on ODNR to ensure that no harm is done and appellants have not put forth evidence to establish that ODNR owed a special duty to them to ensure that their wells were not dewatered.

Appellants also argue that ODNR allowed SME to continue its coal mining operations even though ODNR knew that SME had permitted its liability insurance policy to lapse. Pursuant to R.C. 1513.07(B)(2)(q), the insurance company is the one required to give prompt notice to both the permittee and the chief if its public liability insurance policy lapses for any reason including the

nonpayment of insurance premiums. Upon the lapse of any such policy, the chief may suspend the permit and all other outstanding permits until proper insurance coverage is obtained. However, the chief is not required to do so and appellants cannot hold ODNR liable for a decision not to suspend further operations of SME.

Appellants have not demonstrated that the trial court erred in granting the motion to dismiss filed by ODNR. Therefore, appellants' sole assignment of error is overruled.

Based on the foregoing, appellants' sole assignment of error is overruled and the judgment of the Ohio Court of Claims is hereby affirmed.

*Judgment affirmed.*

PEGGY BRYANT and TYACK, JJ., concur.